# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| **GRADY RENARD WILLIAMS, JR.,** : | |
| : | |
| **Plaintiff,** : | |
| VS. : | |
| : | **CASE NO.: 5:24-CV-178-TES-CHW** |
| **LAWRENCE WHITTINGTON,** : | |
| : | |
| **Defendant.** : | |
| _____ : | |

## ORDER AND RECOMMENDATION

In accordance with the Court's previous orders and instructions, pro se Plaintiff Grady Renard Williams, Jr., an inmate who is currently incarcerated at Valdosta State Prison in Valdosta, Georgia, filed a Recast Complaint (ECF No. 6).[1] Plaintiff has also submitted a "Declaration" related to this Complaint (ECF No. 4), and he seeks leave to proceed *in forma pauperis* (ECF No. 7). For the reasons discussed below, Plaintiff will be allowed to proceed *in forma pauperis* in this action, but it is **RECOMMENDED** that Plaintiff's claims be **DISMISSED without prejudice.**

## MOTION TO PROCEED IN FORMA PAUPERIS

Plaintiff has filed a motion to proceed without prepayment of the filing fee in this case (ECF No. 7). Federal law bars a prisoner from bringing a civil action in federal court *in forma pauperis*

---

[1] Plaintiff's Recast Complaint indicates that Plaintiff is now housed in the Valdosta State Prison in Valdosta, Georgia. Attach. 2 to Recast Compl. 1, ECF No. 6-2. The Clerk is **DIRECTED** to correct Plaintiff's address on the docket accordingly.

> if [he] has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). This is known as the "three strikes provision." Under § 1915(g), a prisoner incurs a "strike" any time he has a federal lawsuit or appeal dismissed on the grounds that it is (1) frivolous, (2) malicious, or (3) fails to state a claim. *See Medberry v. Butler*, 185 F.3d 1189, 1192 (11th Cir. 1999); *see also Daker v. Comm'r, Ga. Dep't of Corr.*, 820 F.3d 1278, 1283-84 (11th Cir. 2016) (confirming that "these three grounds are the *only* grounds that can render a dismissal a strike"). Once a prisoner incurs three strikes, his ability to proceed *in forma pauperis* in federal court is greatly limited: leave to proceed *in forma pauperis* may not be granted unless the prisoner is under imminent danger of serious physical injury. *Medberry*, 185 F.3d at 1192.

A review of court records on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") database reveals that Plaintiff has filed multiple federal lawsuits and that at least three of his complaints or appeals have been dismissed as frivolous, or malicious, or for failure to state a claim. *See, e.g.,* Order Dismissing Compl., *Williams v. Ga. Dep't of Corr.*, ECF No. 4 in Case No. 5:15-cv-0425-CAR-MSH (M.D. Ga. Dec. 8, 2015) (dismissing for failure to state a claim, as frivolous, and pursuant to § 1915(g)); Order Dismissing Compl., *Williams v. Owens*, ECF No. 39 in Case No. 5:13-cv-0254-MTT-MSH (M.D. Ga. Sept. 15, 2014) (adopting recommendation to dismiss for failure to state a claim); Order Dismissing Compl., *Williams v. Owens*, ECF No. 14 in Case No. 6:12-cv-00110-BAW-JEG (S.D. Ga. Jan. 30, 2013) (adopting recommendation to

dismiss for failure to state claim). Plaintiff is accordingly barred from prosecuting this action *in forma pauperis* unless he is in imminent danger of serious physical injury. 28 U.S.C. § 1915(g).

To qualify for this exception, a prisoner must allege specific facts that describe an "ongoing serious physical injury," or "a pattern of misconduct evidencing the likelihood of imminent serious physical injury." *Sutton v. Dist. Attorney's Office*, 334 F. App'x 278, 279 (11th Cir. 2009) (per curiam) (internal quotation marks omitted). Complaints of past injuries are not sufficient. *See Medberry*, 185 F.3d at 1193. Vague and unsupported claims of possible dangers likewise do not suffice. *See White v. State of Colo.*, 157 F.3d 1226, 1231 (10th Cir. 1998). The exception to § 1915(g) is to be applied only in "genuine emergencies," when (1) "time is pressing," (2) the "threat or prison condition is real and proximate," and (3) the "potential consequence is serious physical injury." *Lewis v. Sullivan*, 279 F.3d 526, 531 (7th Cir. 2002).

As discussed in more detail below, Plaintiff's Recast Complaint is based on his allegations that a "hit" was placed on him by gang members in Wilcox State Prison. Recast Compl. 5, ECF No. 6. Plaintiff's "Declaration" in support of his Recast Complaint also alleges that he is still receiving death threats based on this alleged "hit." Decl. 2, ECF No. 8. In an abundance of caution, the Court finds these allegations sufficient to establish that Plaintiff may be in imminent danger of serious physical injury. *See, e.g., Barber v. Krepp*, 680 F. App'x 819, 821 (11th Cir. 2017) (per curiam) (holding that a prisoner can establish an imminent danger of serious physical injury "by recounting recent injuries that reveal an 'ongoing pattern of acts' as well as threats of future harm" and "it is not clear that merely

transferring him from one prison to another within the Georgia penal system will end the retaliation against him"); *see also id.* at 821 n.2 ("It is not necessary that the allegations of imminent harm be contained in a document labelled a complaint[.]"). Therefore, § 1915(g) does not bar Plaintiff from proceeding *in forma pauperis* in this case.

Because a review of Plaintiff's motion to proceed *in forma pauperis* shows that he is unable to pay the cost of commencing this action, his application to proceed *in forma pauperis* (ECF No. 7) is hereby **GRANTED**. However, even if a prisoner is allowed to proceed *in forma pauperis*, he must nevertheless pay the full amount of the $350.00 filing fee. 28 U.S.C. § 1915(b)(1). If the prisoner has sufficient assets, he must pay the filing fee in a lump sum. If sufficient assets are not in the account, the court must assess an initial partial filing fee based on the assets available. Despite this requirement, a prisoner may not be prohibited from bringing a civil action because he has no assets and no means by which to pay the initial partial filing fee. 28 U.S.C. § 1915(b)(4). In the event the prisoner has no assets, payment of the partial filing fee prior to filing will be waived.

Plaintiff's submissions indicate that he is unable to pay the initial partial filing fee. Accordingly, it is hereby **ORDERED** that his complaint be filed and that he be allowed to proceed without paying an initial partial filing fee.

### I. Directions to Plaintiff's Custodian

Hereafter, Plaintiff will be required to make monthly payments of 20% of the deposits made to his prisoner account during the preceding month toward the full filing fee. The clerk of court is **DIRECTED** to send a copy of this Order to Plaintiff's current place of incarceration. It is **ORDERED** that the warden of the institution wherein Plaintiff

is incarcerated, or the sheriff of any county wherein he is held in custody, and any successor custodians, shall each month cause to be remitted to the Clerk of this Court twenty percent (20%) of the preceding month's income credited to Plaintiff's account at said institution until the $350.00 filing fee has been paid in full. 28 U.S.C. § 1915(b)(2). In accordance with provisions of the Prison Litigation Reform Act ("PLRA"), Plaintiff's custodian is hereby authorized to forward payments from the prisoner's account to the Clerk of Court each month until the filing fee is paid in full, provided the amount in the account exceeds $10.00. It is **ORDERED** that collection of monthly payments from Plaintiff's trust fund account shall continue until the entire $350.00 has been collected, notwithstanding the dismissal of Plaintiff's lawsuit or the granting of judgment against him prior to the collection of the full filing fee.

### II.     Plaintiff's Obligations Upon Release

Plaintiff should keep in mind that his release from incarceration/detention does not release him from his obligation to pay the installments incurred while he was in custody. Plaintiff remains obligated to pay those installments justified by the income in his prisoner trust account while he was detained. If Plaintiff fails to remit such payments, the Court authorizes collection from Plaintiff of any balance due on these payments by any means permitted by law. Plaintiff's Complaint may be dismissed if he is able to make payments but fails to do so or if he otherwise fails to comply with the provisions of the PLRA.

# DISMISSAL FOR FAILURE TO STATE A CLAIM

## I. Standard of Review

The PLRA obligates the district courts to conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a government entity, official, or employee. *See* 28 U.S.C. § 1915A(a). Screening is also required under 28 U.S.C. § 1915(e) when the plaintiff is proceeding IFP. Both statutes apply in this case, and the standard of review is the same. When conducting preliminary screening, the Court must accept all factual allegations in the complaint as true. *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006) *abrogated in part on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010); *Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003). Pro se pleadings, like the one in this case, are "'held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.'" *Hughes*, 350 F.3d at 1160 (citation omitted). Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

A claim is frivolous when "it lacks an arguable basis either in law or in fact." *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (internal quotation marks omitted). The Court may dismiss claims that are based on "indisputably meritless legal" theories and "claims whose factual contentions are clearly baseless." *Id.* (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (second alteration in original) (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1216 (3d ed. 2004)). In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003).

## II. Factual Allegations

Plaintiff's Recast Complaint centers on his treatment in the Wilcox, Dooly, and Valdosta State Prisons. Recast Compl. 5, ECF No. 6. Plaintiff contends he helped another inmate file a lawsuit against Defendant Whittington, the former warden of Wilcox State Prison. *Id.* According to Plaintiff, Defendant Whittington forwarded a copy of this complaint "to the Chief Enforcer of the Gangster Disciples . . . who ordered a hit on

7

[Plaintiff]." *Id.* Plaintiff contends gang members attempted to break into Plaintiff's cell in December of 2022, but they were unable to access Plaintiff. *Id.* Plaintiff thus contends the "Chief Enforcer ordered a hit on [Plaintiff's] family by using the cellphone to call gang members on the streets to carry-out the hits." *Id.* As a result, Plaintiff alleges "20 of [his] family members have been murdered." *Id.* at 5-6. In addition to Defendant Whittington, Plaintiff names Wardens Mims, Sales, and Sampson as Defendants in this action, though he does not explain in which facility each of these individuals serves as a warden. *Id.* at 4. Plaintiff contends these Defendants have violated his constitutional rights, and as a result he seeks declaratory relief, injunctive relief, and monetary damages, among other things. *Id.* at 6.

### III. Plaintiff's Claims

#### A. Claims Included in Plaintiff's Declaration

Plaintiff filed a separate declaration that purports to raise claims concerning his incarceration specifically at the Valdosta State Prison starting on or about August 16, 2024. Decl. 1, ECF No. 8. According to this declaration, Plaintiff was placed in imminent danger of serious physical injury when a sergeant at the prison failed to secure his cell door for two days. *Id.* Plaintiff also alleges that another prison official placed Plaintiff in danger by holding a grievance filed by Plaintiff "at an angle where the inmate walking with her could read the contents after [Plaintiff] gave it to her." *Id.* at 2. Plaintiff contends this inmate informed the Gangster Disciples that Plaintiff filed a grievance concerning his unsecured cell door. *Id.* In addition, Plaintiff alleges that orderlies at Valdosta State Prison are often unsupervised and "are threatening to starve inmates who they consider rats" and

have opportunities "to either put something harmful into someone's food or not feed them at all." *Id.* Plaintiff has also complained to other prison officials "about the murder of [his] family members and who is responsible," but officials have not taken any action to "report this criminal activity to the proper law enforcement agency." *Id.* As noted above, Plaintiff also contends he is still receiving death threats at Valdosta State Prison. *Id.*

Plaintiff's declaration may be liberally construed as a motion to supplement his Recast Complaint. A party must always obtain leave of court to "serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). While the grant or denial of the opportunity to supplement is in this Court's discretion, the Court must provide some "justifying reason" to deny this opportunity; absent such reason, denial "is merely an abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1211 (11th Cir. 2008) (holding that the Eleventh Circuit will "review the denial of leave to supplement a complaint under Fed. R. Civ. P. 15(d) for abuse of discretion"). Justifying reasons may include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman*, 371 U.S. at 182. Because a motion to amend or supplement is non-dispositive, a magistrate judge may rule on it in an order rather than a report and recommendation. *See Reeves v. DSI Sec. Servs., Inc.*, 395 F. App'x 544, 548 (11th Cir. 2010) (per curiam) ("A district court may also designate a magistrate judge to rule on

9

certain non-dispositive pretrial motions, such as a motion to amend a complaint."); *Palmore v. Hicks*, 383 F. App'x 897, 899–900 (11th Cir. 2010) (per curiam) ("An order disposing of a motion to amend is a non-dispositive pretrial ruling.").

To the extent Plaintiff's declaration can be construed as a motion to supplement, it is denied. Plaintiff was previously warned that the opportunity to file a recast complaint was not an opportunity to raise all possible claims he may have against state officials and that he would not be permitted to join claims against multiple defendants in one action unless those claims complied with the Federal Rules of Civil Procedure. Those rules permit a plaintiff to join only related claims and defendants in a single complaint. To join defendants under Federal Rule of Civil Procedure 20(a)(2), the plaintiff must establish that he is asserting a right to relief against them "jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and that "any question of law or fact common to all defendants will arise in the action." Once a plaintiff has established that each defendant is properly joined, only then may he join as many claims as he has against each party per Federal Rule of Civil Procedure 18(a). *See, e.g.,* 6A Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 1585 (3d Ed. Apr. 2023) ("Once parties are properly joined under [Rule 20] as to a particular claim, additional claims, whether they are related or unrelated or they are by or against all or less than all of the parties may be joined under Rule 18(a).").

The Eleventh Circuit applies the "logical relationship" test to determine whether claims arise from the same transaction or occurrence for joinder purposes. *See, e.g., Smith v. Trans-Siberian Orchestra*, 728 F. Supp. 2d 1315, 1319 (M.D. Fla. 2010) (citing *Republic*

*Health Corp. v. Lifemark Hosp. Corp. of Fla.*, 755 F.2d 1453, 1455 (11th Cir. 1985)).[2] "Under this test, there is a logical relationship when the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendant." *Republic Health Corp.*, 755 F.2d at 1455 (internal quotation marks omitted). In exercising its discretion regarding joinder, the Court should "provide a reasoned analysis that comports with the requirements of the Rule" and "based on the specific fact pattern presented by the plaintiffs and claims before the court." *Hagan v. Rogers*, 570 F.3d 146, 157 (3d Cir. 2009). The Court's discretion is also informed by the PLRA and its goals of preventing unwieldy litigation, ensuring the payment of filing fees, and limiting prisoners' ability to bring frivolous cases. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

The claims in Plaintiff's declaration do not rest on the same operative facts as the claims in his Recast Complaint. The claims occurring at Valdosta State Prison involve different prison officials located solely at that prison. Plaintiff does not allege that any individuals at Valdosta State Prison were responsible for any of the conduct that occurred at any of Plaintiff's previous prisons.[3] Plaintiff has therefore failed to show that the

---

[2] The standard for whether claims arise from the same transaction or occurrence for Rule 20 purposes is the same as that used for compulsory counterclaims under Federal Rule of Civil Procedure 13. *See Smith*, 728 F. Supp. 2d at 1319.

[3] To the extent Plaintiff is claiming Defendant Whittington is responsible for any continued danger Plaintiff faces from gangs in Valdosta State Prison, those claims are addressed in sections III.B and C, below. But Plaintiff has not alleged facts sufficient to connect Defendant Whittington with any Valdosta State Prison official or to show that he was responsible for any of their conduct.

requirements of Rules 18 and 20 are met. *See Smith v. Owens*, 625 F. App'x 924, 928 (11th Cir. 2015) (per curiam) (holding district court did not abuse discretion by dismissing claims for improper joinder when "Plaintiff's complaint alleged a variety of unrelated claims against different corrections officers, arising out of different events and occurring on different dates").

Moreover, allowing Plaintiff to supplement his Recast Complaint would permit him to circumvent the Court's previous orders and instructions as well as the three-strikes rule of 28 U.S.C. § 1915(g). Plaintiff was ordered to file a Recast Complaint that consisted of only ten total pages. Order 4, July 12, 2024, ECF No. 4. Plaintiff was clearly warned that the Court would "not consider any allegations in any other document, or any allegations not contained within those ten pages, to determine whether Plaintiff has stated an actionable claim." *Id.* Plaintiff, a three-striker, should not be allowed to make an end-run around this Court's orders attempting to limit the scope of this action and the statutes governing prisoners who have previously abused the privilege of proceeding *in forma pauperis*. *See, George*, 507 F.3d at 607 (observing that the Court's discretion to join parties and claims is also informed by the PLRA and its goals of preventing unwieldy litigation, ensuring the payment of filing fees, and limiting prisoners' ability to bring frivolous cases); *Scott v. Kelly*, 107 F. Supp. 2d 706, 712 (E.D. Va. 2000) (holding that "permitting [three-strikes prisoner] to include new, unconnected claims which have arisen since his initial filing defeats the purposes of filing fees and the 'three strikes' provision 28 U.S.C. § 1915(g)").

It also appears likely that Plaintiff has not exhausted his administrative remedies with respect to the claims he raises in his declaration. Plaintiff's declaration is dated August 23, 2024, and it describes events that occurred between August 16 and 21, 2024. Decl. 2-3, ECF No. 8. Thus, Plaintiff does not appear to have had enough time to fully exhaust his remedies prior to requesting to add claims related to those events. And because these claims would be dismissed without prejudice, Plaintiff will have the opportunity to raise them in a separate action if he wishes. For all these reasons, the Court exercises its discretion and denies Plaintiff leave to supplement his Recast Complaint.

### B. Retaliation Claims against Defendant Whittington

In the Recast Complaint, Plaintiff primarily suggests that Defendant Whittington retaliated against him by directing gang members to attack first Plaintiff and then Plaintiff's family. To state a First Amendment retaliation claim, an inmate needs to show that he engaged in protected conduct; that the prison official's retaliatory conduct adversely affected the protected conduct; and a causal connection between the protected conduct and the adverse action. *See, e.g., Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011). "[B]ecause prisoner retaliation claims are easily fabricated, and accordingly pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration," however, courts "are careful to require nonconclusory allegations." *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003).

Plaintiff has pleaded that he engaged in protected conduct by helping another inmate file a civil rights lawsuit. *Taylor v. Nix*, 240 F. App'x 830, 836-37 (11th Cir. 2007) (per curiam) (holding that the First Amendment's protection extends to "a prisoner who engages

13

in a protected activity on behalf of other inmates"). He has failed, however, to plead facts sufficient to show a causal connection between this protected conduct and the "hit" that was ultimately placed on him by members of the Gangster Disciples. Plaintiff alleges Defendant Whittington "forwarded a copy of the complaint to an unknown staff member," who then "screenshot these documents and sent them to the Chief Enforcer" of the gang. Recast Compl. 5, ECF No. 6. The fact that Defendant Whittington sent a copy of the complaint to a staff member—standing alone—cannot establish a retaliatory motive. Plaintiff has not alleged any facts showing that Defendant Whittington directed the staff member to forward the documents to anyone, nor has he shown that Defendant Whittington otherwise knew the staff member would send them to the "Chief Enforcer" or that the gang would take action against Plaintiff.

Plaintiff also fails to allege any factual detail about the nearly two dozen family members he claims were murdered by gang members at the behest of Defendant Whittington. Although Plaintiff does identify these individuals by name, the Recast Complaint contains no allegations at all concerning when, where, and how these deaths occurred. Recast Compl. 6, ECF No. 6. Absent some sort of facts to support the allegations that the "Chief Enforcer" was able to identify twenty of Plaintiff's family members, locate those individuals, and coordinate their murders (while having access only to a contraband prison cellphone), these allegations cannot show causation.[4] Plaintiff's retaliation claims against Defendant Whittington are therefore subject to dismissal.

---

[4] While the Court generally takes a prisoner's allegations as true and construes them liberally, an inmate's "past litigious conduct" may "inform a district court's discretion" to

14

C. <u>Deliberate Indifference to Safety Claims against Defendants Whittington, Mims, Sales, and Sampson</u>

Plaintiff also contends that Defendants "are aware of . . . contraband cellphones within their prison system and ha[ve] turned a blind eye to the gangs organizing themselves within their prisons[.]" Recast Compl. 5, ECF No. 6. Claims that prison officials were deliberately indifferent to an inmate's safety are generally cognizable under the Eighth Amendment to the United States Constitution. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prisoner asserting an Eighth Amendment deliberate-indifference claim must first "demonstrate, as a threshold matter, that he suffered a deprivation that was objectively, 'sufficiently serious.'" *Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024) (en banc) (quoting *Farmer*, 511 U.S. at 834). Then the prisoner "must demonstrate that the defendant acted with 'subjective recklessness as used in the criminal law,'" which requires a plaintiff to "show that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff[.]" *Id.* Where a prison official responds

---

dismiss a case on screening under §§ 1915A and 1915(e). *See Cochran v. Morris,* 73 F.3d 1310, 1316 (4th Cir. 1996) (approving district court's consideration of previous litigation in determining whether to dismiss a case under predecessor to § 1915(e)); *Daker v. Ward*, 999 F.3d 1300, 1310 (11th Cir. 2021) (holding that district court did not abuse discretion by examining plaintiff's "history as a prolific serial filer" in dismissing complaint without prejudice as malicious under 28 U.S.C. § 1915A). As noted above, Plaintiff is a frequent filer who has filed more than three dozen actions in the federal courts. He has been known to file cases under both his given name the name "Abdul Malik Bey," and he frequently raises frivolous claims under the "sovereign citizen" theory. *See, e.g., Bey v. Georgia*, No. 5:23-cv-00322-MTT, 2023 WL 6406321, at *1, 3 (M.D. Ga. Oct. 2, 2023). He has long been characterized as an abusive filer subject to the three-strikes restrictions of 28 U.S.C. § 1915(g). The Court thus views Plaintiff's allegations that Defendant Whittington orchestrated the murder of nearly two dozen individuals in Plaintiff's family with some skepticism.

reasonably to a known risk, however, that official is not liable for an Eighth Amendment violation. *Id.*

In the context of a claim involving prison officials' deliberate indifference to an inmate's safety, a prisoner must allege facts showing that a prison official had "more than a generalized awareness of risk" to the prisoner. *Marbury v. Warden*, 936 F.3d 1227, 1234 (11th Cir. 2019) (quoting *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1101-02 (11th Cir. 2014)). The inmate can do this by pleading facts showing "that he was in an environment so beset by violence that confinement, by its nature, threatened him with the substantial risk of serious harm" or by providing prison officials with details about a specific threat sufficient "to enable them to conclude that it presents a 'strong likelihood' of injury, not a 'mere possibility.'" *Id.* at 1235-36 (quoting *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015)); *see also Estate of Owens v. GEO Group, Inc.*, 660 F. App'x 763, 769 (11th Cir. 2016) (per curiam) (identifying "the particularized risk claim" and "the dangerous conditions" claim as the two theories under which inmates may seek to advance an Eighth Amendment failure-to-protect claim). The objective prong requires the prisoner to allege facts establishing that the prison official objectively "responded to the known risk in an unreasonable manner, in that he or she knew of ways to reduce the harm but knowingly or recklessly declined to act." *Marbury*, 936 F.3d 1234-35 (internal quotation marks omitted).

Plaintiff has not stated an actionable claim under either of these theories. First, Plaintiff fails to allege facts sufficient to show that any named Defendant actually knew that his own acts or omissions placed Plaintiff at substantial risk of serious harm. As noted

above, Plaintiff's allegation that Defendant Whittington "forwarded a copy of the complaint to an unknown staff member" is not supported by any facts that could lead to a conclusion that Defendant Whittington took this action with retaliatory or other sinister motive.  Recast Compl. 5, ECF No. 6.  Just as importantly, Plaintiff also fails to allege that Defendant Whittington directed this staff member to "screenshot these documents and sen[d] them to the Chief Enforcer" or set forth any facts that could show Defendant Whittington knew this staff member would forward the documents to gang members or that the gang members would attempt to harm Plaintiff or his family.  Plaintiff has therefore failed to allege facts sufficient to show that Defendant Whittington actually knew that his own conduct would put Plaintiff at substantial risk of serious harm.  And Plaintiff's allegations that Defendants Whittington, Mims, Sales, and Sampson were generally "aware" of the existence of contraband cellphones and "turned a blind eye to the gangs organizing themselves within their prison system" are merely conclusory and therefore insufficient to establish the type of subjective recklessness necessary to state a deliberate indifference claim, at least without any plausible supporting facts.  *Iqbal*, 556 U.S. at 678.

Plaintiff also fails to allege specific facts that could show that any prison in which he has been housed was one "where violence and terror reign[ed]" and was thus so dangerous that Plaintiff faced a substantial risk of serious harm simply because he was housed there.  *Marbury*, 936 F.3d at 1234 (internal quotation marks omitted).  Plaintiff's claims that Defendant Whittington, Mims, Sales, and Sampson were deliberately indifferent to Plaintiff's safety should therefore be dismissed without prejudice.

D. <u>Remaining Claims against Defendants Mims, Sales, and Sampson</u>

Finally, Plaintiff contends that Defendants Mims, Sales, and Sampson, "failed or refused to contact the Georgia Bureau of Investigations so that [he] could bring the individuals responsible for [his family members'] murders to justice." Recast Compl. 5, ECF No. 1. Plaintiff does not have a constitutional right to have an individual criminally investigated or prosecuted. *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[I]n American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *see also Otero v. U.S. Attorney Gen.*, 832 F.2d 141, 141 (11th Cir. 1987) (holding that the United States District Courts have no authority to order state or federal law enforcement agencies or prosecutors to initiate investigations or prosecutions, and private citizens likewise have no power to originate criminal proceedings on their own initiative); *Stringer v. Doe*, 503 F. App'x 888, 890–91 (11th Cir. 2013) (per curiam) (finding no substantive due process right to an internal investigation by law enforcement). Any such claims Plaintiff intended to raise are therefore subject to dismissal.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to proceed *in forma pauperis* (ECF No. 7) is **GRANTED**, but it is **RECOMMENDED** that this action is **DISMISSED WITHOUT PREJUDICE** for failure to state a claim upon which relief may be granted. To the extent Plaintiff's declaration (ECF No. 8) can be liberally construed as a motion to supplement his Recast Complaint, it is **DENIED.**

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this order and recommendation with the Honorable Tilman E. Self, III, United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this order and recommendation. The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections. Any objection is limited in length to **TWENTY (20) PAGES**. *See* M.D. Ga. L.R. 7.4. Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made. *See* 11th Cir. R. 3-1.

**SO ORDERED AND RECOMMENDED**, this 11th day of October, 2024.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge